IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPENCER STECZ,<br><br>    Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>    Defendant._____/ | No. C 05-01171 CRB<br><br>**MEMORANDUM AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Spencer Stecz filed this suit against State Farm Mutual Auto Insurance Company alleging breach of an automobile insurance contract and breach of the implied covenant of good faith and fair dealing. Plaintiff also seeks punitive damages. Now pending is defendant's motion for summary judgment or in the alternative summary adjudication. After carefully considering the pleadings and evidence submitted by the parties, and having had the benefit of oral argument, the motion for summary judgment is DENIED in part and GRANTED in part.

## BACKGROUND

On March 30, 2004, plaintiff purchased a 2004 Chevy Blazer Xtreme. Plaintiff's mother provided $1,000 as a down payment on the vehicle and plaintiff secured a $29,000 loan for the balance of the purchase price. Title was taken under both plaintiff's and plaintiff's mother's names.

A.  **The Insurance Policy**

Defendant issued plaintiff an Automobile Liability Policy for the Chevy Blazer. Plaintiff also purchased independent GAP insurance which provides that plaintiff will recover $50,000 if the car is rendered a total loss. The policy contains a typical "fraud or concealment" provision which states:

> [t]here is no coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

(Decl. of Terra Stone in Support of Motion, Exhibit 1, Stecz State Farm Automobile Insurance Policy, Conditions, ¶ 7).

B.  **The Theft of the Blazer**

On November 14, 2004, plaintiff visited the Stadium Bar in San Leandro. Plaintiff states that he went to the bar alone with the intent of having a few drinks. Sometime between 10 p.m. and 12:45 a.m., plaintiff realized he was too intoxicated to drive, and decided to call a friend for a ride home. The friend picked plaintiff up at the Stadium Bar and plaintiff left his vehicle parked in front of the bar.[1] Plaintiff intended to return the following day to pick up the vehicle.

On November 15, 2004, plaintiff borrowed his mother's car and drove to the vicinity of the Stadium Bar to meet with someone at ABC bartending where plaintiff was taking classes. ABC bartending is adjacent to Stadium Bar and plaintiff explains that he needed to pick up paperwork at the school and that he also intended to check on his vehicle.

Upon arriving at Stadium Bar plaintiff realized that his vehicle was missing. Plaintiff called the local sheriff's office. He also called defendant to report the loss. The sheriff arrived shortly after plaintiff's call and issued a theft report. According to the report,

---

[1] There is a dispute as to whether plaintiff locked the car that night. Plaintiff claims he closed the windows and set the alarm; however, the car was found with the windows open and defendant's expert claims the window could not have been opened unless a correctly cut key was used in the ignition. For purposes of defendant's motion, however, the Court must accept plaintiff's version of events.

plaintiff reported that all keys were accounted for. The sheriff also noted that there were no signs of theft, for example, no broken glass or discarded auto parts.

**C.    Plaintiff's Insurance Claim**

On November 16, 2004, plaintiff submitted an Affidavit of Theft to defendant. One month later plaintiff provided defendant with a recorded statement detailing the events of November 14, 2004. The following month a woman found the vehicle in an abandoned warehouse in Oakland. Plaintiff went to the warehouse and, after identifying the vehicle as his Blazer, called the Oakland Police Department. The police found the vehicle completely stripped. It was laying on a log and the tires, wheels, seats, stereo and dashboard were missing.

On January 9, 2005, defendant's forensic expert, Dan Kern, inspected the vehicle. Kern's official report indicates that neither of the two official keys exhibited signs of duplication. In addition, the door locks and frames did not appear to have any forcible markings. Similarly, the ignition wafers did not have any signs of tampering, bypass or forcible activity. Finally, the vehicle's anti-theft system was subject to a circuit disconnection which ensured that the car would not start without a proper rotation of the ignition. Kern concluded that the car could not have been moved without a correctly cut key. Defendant subsequently retained a "coverage" attorney to perform a preliminary assessment of its liability.

Defendant examined plaintiff under oath on March 31, 2005. During the examination defendant asked plaintiff about the evening of November 14, 2004. Defendant also inquired into plaintiff's financial situation and if plaintiff had ever considered selling the car. Defendant's examination into these subjects revealed a number of inconsistencies in plaintiff's statements.

As a result of these inconsistencies, defendant's coverage counsel advised defendant that it had grounds to deny the claim. Counsel informed defendant that she believed plaintiff had made material misrepresentations during the recorded interview and the examination under oath. According to counsel, these misrepresentations in conjunction with Kern's

expert report established that plaintiff had violated the fraud and concealment provision of his policy and therefore had voided any right to coverage. Defendant subsequently denied plaintiff's insurance claim based on his alleged violation of the fraud provision.

Plaintiff filed this complaint in state court alleging breach of contract and breach of the implied covenant of good faith and fair dealing. Defendant removed the action to this Court on the basis of diversity jurisdiction. Defendant now moves for summary judgment on the ground that plaintiff's material misrepresentations voided his right to coverage. In addition, defendant claims it is entitled to judgment as a matter of law on the bad faith claim because there is a genuine dispute as to whether it had an obligation to provide coverage and therefore its decision was reasonable.

**SUMMARY JUDGMENT STANDARD**

One of the principle purposes of summary judgment is to isolate and dispose of factually unsupported claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). A party moving for summary judgment that does not have the ultimate burden of persuasion at trial has the initial burden of producing evidence negating an essential element of the non-moving party's claims *or* showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party does not satisfy its initial burden of production, the non-moving party has no obligation to produce evidence and summary judgment must be denied. If, on the other hand, the moving party has satisfied its initial burden, then the non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. See Nissan Fire & Marine Ins. Co., 210 F.3d at 1102. A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In evaluating evidence at the summary judgment stage the Court does not make credibility determinations or weigh conflicting evidence, and draws all reasonable inferences

in the light most favorable to the nonmoving party.  See T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Assn., 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 317).

## DISCUSSION

**A.     The Breach of Contract Claim**

Defendant argues that it owes no contract benefits to plaintiff because he made misrepresentations as to material facts during the investigation and therefore violated the fraud provision of his policy.  Plaintiff does not contest the validity of the fraud provision and he concedes that he made a number of inconsistent statements; however, he contends that the fraud provision is inapplicable because the misrepresentations were not material to defendant's investigation.[2]

According to California law, a fact is material if it "concerns a subject reasonably relevant to the insurer's investigation, and . . . a reasonable insurer would attach importance to the fact misrepresented."  Cummings v. Fire Ins. Exch., 202 Cal. App. 3d 1407, 1417 (1988).  "The materiality of the statement will be determined by the objective standard of its effect upon a reasonable insurer."  Id. at 1415.  A material misrepresentation serves to invalidate an insurance policy.  See Perovich v. Glens Falls Ins. Co., 401 F.2d 145, 147 (9th Cir. 1968); see also  Hyland v. Millers Nat. Ins. Co., 91 F.2d 735, 741-43 (9th Cir. 1937) (a misrepresentation as to the amount of property damaged voided coverage); Cummings, 202 Cal. App. 3d at 1415-17 (holding that insurer did not breach policy by denying coverage when claimant materially misrepresented identity of vandal).  Though materiality is a mixed question of law and fact, it may be decided on summary judgment when "reasonable minds could not disagree on the materiality of the misrepresentations."  Cummings, 202 Cal. App. 3d at 1417.

In Perovich, for example, the court held that the insured's misrepresentation of the value of the damaged property was material.  401 F.2d at 147; accord Hyland, 91 F.2d at

---

[2]There is a subsidiary issue as to whether the statements were "made with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim" under the policy.  Resolution of this issue, however, is unnecessary where there is a dispute as to materiality.  Where the intentionality issue is relevant it is substantively considered.

1  741-43. Such a misrepresentation is undisputably material to the insurer's investigation since
2  it affects the insurer's valuation of the claim.  In <u>Cummings</u>, the court held that a
3  misrepresentation as to the identity of the alleged vandal was material as a matter of law
4  because it would deflect the insurer's investigation away from the culpable party, and the
5  identity of the culpable party was relevant to coverage.
6      Defendant identifies several misrepresentations that it claims were material to its
7  investigation of plaintiff's claim..

    **1.    Conflicting testimony as to who drove plaintiff home**

9   First, defendant points to plaintiff's inconsistent statements regarding who picked
10 him up on the night of the theft. During an initial interview plaintiff asserted that he had
11 called his friend John Clark on the night of the theft and asked him to pick him up at the
12 Stadium Bar because plaintiff was too intoxicated to drive. (Decl. of Terra Stone in Support
13 of Motion for Summary Judgment, Exhibit 2, Recorded Statement, STF-CF0501).
14     However, on March 25, 2005, plaintiff submitted the declaration of Andy Ciriello.
15 According to the declaration, plaintiff called Ciriello on November 14th and Ciriello picked
16 him up at Stadium Bar. (Decl. of Lawrence Padway in Opposition to Motion for Summary
17 Judgment, Exhibit 5, Decl. of Andy Ciriello). At plaintiff's subsequent examination under
18 oath, plaintiff explained that he had initially identified the friend as John, because to the best
19 of his knowledge he had believed John had picked him up. (Decl. of Lawrence Padway in
20 Opposition to Motion for Summary Judgment, Exhibit 4, Exam. under Oath, 53:9-54:22). He
21 explained that he first learned that Ciriello had picked him up the morning of November 15th
22 when Andy called to check up on him. <u>Id.</u>  Plaintiff claimed that he had no independent
23 recollection of Ciriello picking him up because he had blacked out on the night of the 14th.
24 <u>Id.</u>
25     Defendant responds that this inconsistency cannot be attributed to a loss of memory.
26 Since plaintiff learned on November 15th that Andy had picked him the night before, his
27 statement during his recorded interview, on December 16th, that John had picked him up
28 must have been an intentional misrepresentation. In addition, defendant's examination of

1  plaintiff's phone records indicates that no calls were made from plaintiff's cellular phone
2  between 6:30 p.m. on the 14th and 11:30 a.m. on the 15th. (Declaration of Terra Stone in
3  Support of Motion for Summary Judgment, Exhibit 10).

4  Although plaintiff's misrepresentation is suspicious, reasonable jurors could place
5  different weight on the importance of this statement.[3]  A juror could conclude that the
6  statement was material to the insurer's overall assessment of the claim;  however, a juror
7  could also conclude that who drove plaintiff home on the night of the theft has little or no
8  bearing on the defendant's investigation.  Since reasonable jurors could dispute the
9  materiality of this misrepresentation, the Court cannot use this fact in granting summary
10 judgment.  See Cummings, 202 Cal. App. 3d at 1417 (materiality can be determined on
11 summary judgment only when "reasonable minds could not disagree on the materiality of the
12 misrepresentations").

### 2. Plaintiff denies any attempts to sell the vehicle

14 Plaintiff also misrepresented whether he had ever tried to sell the car.  Plaintiff's
15 mother told defendant that plaintiff had posted the vehicle for sale during June 2004.  During
16 plaintiff's subsequent examination under oath, defendant asked plaintiff if he had ever tried
17 to sell the vehicle or if he had ever considered selling the vehicle. (Decl. of L. Padway,
18 Exhibit 4, Exam. under Oath, 34:20-25).  Plaintiff answered no to both questions.

19 Defendant then confronted plaintiff with plaintiff's mother's statement.  Plaintiff
20 acknowledged that he had temporarily considered selling the vehicle. (Decl. L. Padway,
21 Exhibit 4, 35:3-14).  Defendant later asked plaintiff if anyone had tried to buy the vehicle.
22 (Decl. of L. Padway, Exhibit 4, 76:11).  Plaintiff indicated no, and said the conversation

---

[3] There is no serious dispute as to the intentionality of this statement -even though plaintiff claims that none of the misrepresentations were made with the intent to deceive. (Plaintiff's Opposition to the Motion for Summary Judgement, 15: 6-7). Plaintiff's position in untenable since plaintiff by his own admission, knew on December 16th that Andy and not John had picked him up on the night of the theft. When a party has knowledge that his statement is false and the statement is wilfully made, the intent to deceive the insurer is necessarily implied, since the law presumes every man to intend the natural consequences of his acts. Cummings, 202 Cal. App. 3d at 1416. Plaintiff has put forward no argument that refutes this presumption.

about selling the car was strictly between him and his mother. Id. at 17. Plaintiff also stated he had never advertised the car for sale. Id. at 18-21.

Plaintiff was again confronted with his mother's contrary account. Id. at 22-25. Plaintiff then indicated that he had emailed fliers to six individuals, but that he had decided shortly thereafter that he did not want to sell the vehicle. (Decl. L. Padway, Exhibit 4, 76:26-77:1-4). When pressed as to why he considered selling the vehicle, plaintiff explained that the car was worth less than the outstanding loan and that he had begun to lose interest in it. (Decl. L. Padway, Exhibit 4 78:8-9, 80:22-24).

Plaintiff does not contest that he made inconsistent statements regarding his desire to sell the vehicle. In addition, even if plaintiff had tried to re-characterize the statements as consistent, a plain reading of the transcript fully establishes that plaintiff misrepresented his attempt to sell the vehicle. Defendant claims this inconsistent testimony was sufficiently material to void coverage.

Plaintiff's misrepresentation about selling the car presents a close question of materiality. A previously expressed desire to sell the insured vehicle would be relevant to the investigation because it evinces a motive for fabricating the theft. A person that has lost interest in the vehicle or for whom the car has become a financial hardship–such that he considered selling it–would have more of a reason to facilitate or fabricate its theft in order to recover the insurance proceeds.

Nevertheless, the context and timing of the misrepresentations mitigate the materiality of the statement. Plaintiff immediately corrected the misrepresentation after he was confronted with his mother's contrary statement. Since both the misrepresentation and the correction occurred contemporaneously, defendant cannot claim that the misrepresentation influenced its investigation. Defendant does not cite any case in which a fraud provision was applied to a misrepresentation upon which the insurer could not have relied. See Cummings, 202 Cal. App. 3d at 1415 (holding that insurer had established materiality as a matter of law because the insurer could have relied on the insured's misrepresentation).

//

### 3. Misrepresentations on the morning of the theft

Finally, defendant alleges that plaintiff made a number of misrepresentations on the morning of the theft. First, the police report reflects that plaintiff told the police there was no outstanding loan on the truck even though he owed close to $29,000 for the vehicle. (Decl. of Terra Stone in Support of Motion for Summary Judgment, Exhibit 5, Alameda County Sheriff's Report, STF-CF0666). Second, plaintiff informed the police that the stolen vehicle was a white sedan when in fact it was a black sport utility vehicle. Id. at STF-CF0665.

There is a dispute as to whether plaintiff made the statement about the loan with the intent to deceive the police and/or defendant. Plaintiff was shown a copy of the police report during his examination under oath. (Stone Decl. in Support of Motion for Summary Judgment, Coverage Counsel's Recommendation Report, STF-CF0168).[4] Plaintiff confirmed that he told the police that he had no outstanding loans, but explained that he did not know the proper definition of outstanding loans and that he thought the officer was asking whether he was delinquent on his loan payments. Id. Defendant does not contest the plausibility of this explanation.

Plaintiff's statement regarding the description of the stolen vehicle raises several issues. The first is whether the statement to the police is a misrepresentation "made in connection with any claim under this policy." Neither party addresses this issue. However, since plaintiff had to file a police report in order to make a claim under his policy, arguably the statement falls within the fraud provision.

The second issue is materiality. Since giving the police an incorrect description of the vehicle would decrease the likelihood that the vehicle would be found, the statement is arguably material.

Nevertheless, summary judgment must be denied because, again, there is a dispute as to intent. Defendant does not offer any evidence, other than the statement itself, which establishes that plaintiff intentionally lied about the description of the stolen car. Plaintiff

---

[4] Neither party provided the Court with the portions of the transcript addressing this issue and the Court therefore relies on the recommendation report of coverage counsel.

-9-

identified the description as an error during his examination under oath. (Stone Decl. in Support of Motion for Summary Judgment, Exhibit 4, Recommendation Report of Coverage Counsel, STF-CF0168). Plaintiff also provided the insurance company with a correct description the day after the incident in the Affidavit of Theft. The incorrect description may have been the result of a miscommunication between the officer and plaintiff. This scenario is supported by the additional mistakes in the police report that the plaintiff identified and corrected under direct examination. As there is at least a dispute as to intent, summary judgment based on this statement must be denied.

### 4. Summary

A reasonable person might consider some or all of the above misrepresentations material in an overall determination of plaintiff's claim; however, such a finding is not unequivocal. Since the materiality of the misrepresentations is subject to dispute, this Court cannot state as a matter of law that plaintiff violated the fraud provision of the insurance contract. As such, defendant's motion for summary judgment on the breach of contract claim must be denied.

### B.  Breach of Implied Covenant of Good Faith and Fair Dealing

### 1.  A genuine dispute as to coverage[5]

Defendant also seeks summary judgment on plaintiff's bad faith cause of action. To establish a breach of the implied covenant of good faith and fair dealing, a plaintiff must show that benefits were denied and that the reason for the denial was unreasonable or without proper cause. See Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1151 (1990). A defendant is entitled to summary judgment if it can show that there was a genuine dispute as to coverage, such that the denial could be termed reasonable.

> [A] court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a

---

[5] Defendant also claims that it is not liable for bad faith as a matter of law because it relied in good faith on the advice of its coverage counsel. Since the Court concludes that a genuine dispute exists as to coverage, it need not address defendant's claim that it is shielded from liability because of this reliance; however, the Court does consider the reliance on counsel in determining whether a genuine dispute exists as to coverage.

-10-

> genuine issue as to the insurer's liability. An insurer is liable for breach of the implied covenant of good faith and fair dealing if it acted unreasonably in denying coverage.

Lunsfurd v. American Guarantee & Liability Ins. Co., 18 F.3d 653, 656 (9th Cir. 1994) (citing Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 573 (1973)). In addition, a defendant insurer may raise the genuine dispute doctrine where the insurer denies a claim based on the opinion of experts. Fraley v. Allstate Ins. Co., 81 Cal. App. 4th 1282, 1293 (Cal. App. June 14, 2000) (citing Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 381 (C.D. Cal. 1995)).

The genuine dispute doctrine extends to both legal (contractual) disputes as well as to quintessentially factual disputes. Guebara v. Allstate Ins. Co., 237 F.3d 987, 994 (9th Cir. 2001). The doctrine also applies equally to factual disputes over valuation as well as disputes over the underlying circumstances resulting in the loss. In Guebara, for example, the Ninth Circuit affirmed a grant of summary judgment on a bad faith claim because the overall factual calculus indicated that the insured had misrepresented the true value of the damaged property. The court looked to inconsistencies in the insured's statements, the contradicting opinion of an expert, and other suspicious factors in concluding that a genuine dispute existed as to whether the insured had misrepresented her loss.

The insured, Guebara, had alleged that a fire at her residence had destroyed a number of personal items of monetary value; however, the insurer's expert and the fire chief were unable to find any evidence of these items at the scene of the fire. In addition, the insured changed her testimony regarding these items a number of times. During her first interview Guebara had not included a TV, stereo, or cameras; however, her subsequent contents list did include a number of these "big ticket" items. Finally, the court noted that Guebara was facing extreme financial hardship –her house had declined in value from $75,000 to $35,000 and needed extensive electrical repairs–which provided her with a motive to misrepresent the value of loss and/or to commit arson. Given these factors the Ninth Circuit held that a genuine dispute existed as to whether the insured had made material misrepresentations about the value of the loss that would have voided her right to coverage. 237 F.3d at 996. The

-11-

insurer's denial of coverage because of alleged fraud was therefore reasonable as a matter of law.

Here, the undisputed evidence demonstrates that defendant acted reasonably in denying plaintiff's claim. Plaintiff, a 23-year old male, purchased a $30,000 sport utility vehicle with the help of his mother. Plaintiff purchased GAP insurance that provides plaintiff with $50,000 if the car is ever deemed a total loss.

Shortly before the theft plaintiff experienced financial hardship that made the vehicle a burden. Plaintiff was unemployed during the relevant time and had a negative balance in both his checking account and his credit union account. All payments due on the vehicle were made on time, but his mother paid half of each monthly payment.

Plaintiff then considered selling the vehicle. Plaintiff acknowledged that he had sent out emails to at least six individuals asking if anyone was interested in buying the car. Plaintiff's mother also told defendant that her son considered selling the vehicle because the gas was expensive and because he was unemployed. (Decl. of L. Padway in Opp. to Motion for Summary Judgment, Exhibit 7, 34:23-35:3).

Immediately following the recovery of the stolen vehicle defendant had a forensic expert examine the vehicle. The expert found that a correctly cut key was required to operate the vehicle. The expert also found no evidence of foreign key use, or any tampering with the lock ignition that would be consistent with the normal theft of a car.

Further, plaintiff made a number of inconsistent statements during the investigation that raise suspicion. Plaintiff misrepresented who picked him up on the night prior to the theft. Plaintiff also stated that he had made a number of calls on November 14th in order to secure a ride home; however, his phone records indicate that no calls were made from his phone on that night. In addition, he flatly misrepresented his attempt to sell his car until confronted with his mother's contrary statement; even then he still misrepresented whether he had advertised the car for sale. His misrepresentations suggest that he did not want defendant to know he had a motive for being involved in the theft of his vehicle.

These misrepresentations are compounded by plaintiff's statements to the police. According to the police report, plaintiff initially told the police that the stolen vehicle was a white sedan. Such a misrepresentation raises suspicion that plaintiff did not want police to find the stolen vehicle, increasing the likelihood that it would be totaled. Impairing the police investigation would also minimize the likelihood that the police would recover evidence that would contradict the plaintiff's story.

Finally, upon review of this record, legal counsel advised defendant that it could deny coverage based on plaintiff's misrepresentations. Plaintiff has not submitted any evidence that suggests this legal opinion was a sham.[6]

Although none of these factors are dispositive in and of themselves, when taken together they raise the possibility that plaintiff misrepresented the theft of the vehicle, or at least facilitated the theft in order to recover the insurance proceeds. Even when viewed in the light most favorable to plaintiff, the misrepresentations, the plaintiff's financial motive, the expert's report, and coverage counsel's legal opinion, create as a matter of law a genuine dispute over coverage.

**2. Biased investigation**

Plaintiff alleges that even if a genuine dispute exists, summary judgment on the bad faith claim should be denied because defendant's acts evince impermissible bias. Plaintiff also claims that defendant stole and then damaged evidence that was crucial to his case. Plaintiff argues the motion for summary should be denied as a sanction for defendant's spoliation of evidence. Both claims fail.

The genuine dispute doctrine is inapplicable where the insurer's investigation was biased. Guebara, 237 F.3d at 996. Bias can be demonstrated by a number of factors. Chateau Chamberay Homeowners Assn. v. Associated Int'l. Insurance Co., 90 Cal. App. 4th 335, 348 (2001). The relevant factor here is whether the insurer failed to conduct a thorough

---

[6]Plaintiff claims that defendant cannot rely on counsel because it has not provided discovery regarding which counsel authorized the disassembly of the ignition lock. That allegation has no bearing on whether the decision to deny coverage was based on good faith.

-13-

investigation and is therefore precluded from using the genuine dispute defense. Chateau Chamberay Homeowners Assn., 90 Cal. App. 4th at 348 (2001).

In support of his contention, plaintiff presents the declaration of forensic vehicle component analyst Rob Painter. According to Painter, defendant failed to take a number of steps in conducting its investigation. First, defendant did not consider that the keys for the Chevy Blazer Xtreme can be easily duplicated if someone obtains the vehicle identification number. Second, defendant did not take into account that the car could have been stolen by means of towing. In addition, defendant failed to dust the vehicle for fingerprints thereby destroying evidence that could have corroborated plaintiff's story. Finally, defendant's expert, Kern, damaged the ignition lock during reinstallation thereby preventing Painter from assessing whether the ignition lock had been tampered with during the theft. Painter concludes, based on these assertions, that defendant had not conducted a competent theft investigation.

Plaintiff's reliance on Painter's declaration is insufficient to preclude the use of the genuine dispute doctrine. First, in order to establish bias in the bad faith context, plaintiff must show something more than a lack of competency. Negligence in conducting the investigation is not sufficient to rise to the level of bad faith. Bad faith implies dishonesty, fraud and concealment. Congleton v. Nat'l Union Fire Ins. Co., 189 Cal. App. 3d 51, 59 (1973). In addition, a defendant does not breach the implied covenant of good faith and fair dealing by relying on its own expert and not that of the plaintiff. Fraley v. Allstate Ins. Co., 81 Cal. App. 4th 1282, 1292-93 (2000). Thus, even if Painter's declaration is accurate it is not sufficient to establish bias.

Second, although Painter outlines a number of steps that defendant could have taken to improve its investigation, none of his conclusions establish that defendant did not engage in a thorough investigation. Defendant took two separate statements from the person most knowledgeable about the theft. Defendant retained the services of a forensic locksmith and also retained a specialized attorney to help it in its determination. After reviewing the expert's report, the affidavit of theft, the attorney's recommendation, the police report, and

-14-

plaintiff's conflicting statements, defendant decided to deny coverage. Given the number of steps that defendant engaged in, no reasonable jury could find that its investigation was not thorough or that it was conducted in bad faith. See Feldman v. Allstate Ins. Co., 322 F.3d 660, 669 (9th Cir. 2003) (finding on an appeal from a grant of summary judgment that the insurer's investigation was thorough even though the claim had not been submitted to an appraiser because no contractual language mandated it); Adams v. Allstate Ins. Co., 187 F. Supp. 2d 1219, 1230 (C.D. Cal. 2002) (stating on a motion for summary judgment that the insurer's investigation was thorough even though it had been assigned exclusively to a third party investigator).

Plaintiff's contention that summary judgment should be denied because defendant stole and then damaged the ignition lock is equally unpersuasive. Plaintiff's Automobile Liability Policy requires the insured to cooperate with the defendant in securing and giving evidence. (Decl. of Terra Stone in Support of Motion, Exhibit 1, Policy, Reporting a Claim-Insured's Duties, Para. 5, STF-UF00005). Since the claim centered exclusively on the vehicle, an investigation of the vehicle and the ignition itself was well within the purview of the defendant's rights. Moreover, there is no evidence that suggests that defendant's expert intentionally damaged the ignition, and, in any event Kern provided plaintiff with photos of the ignition lock as it looked prior to reinstallation. Plaintiff has not provided any evidence that the photos do not accurately depict the ignition or are inadequate for his own expert to render an appropriate opinion.

Finally even if spoliation had occurred, and the Court excluded any evidence as to the ignition, there remains undisputed evidence that establishes that defendant's denial was reasonable as a matter of law.

### 3. Summary

Since defendant has demonstrated as a matter of law that a genuine dispute exists as to its coverage liability, the Court must grant defendant's motion for summary adjudication as to the bad faith claim. Since plaintiff's bad fath claim does not survive the motion for summary judgment, punitive damages are not recoverable. Adams, 187 F. Supp. 2d at 1231

(holding "a plaintiff who is not able to survive summary judgment on an insurance bad faith claim, is also unable to survive judgment on a . . . claim for punitive damages").

## CONCLUSION

Defendant has failed to establish as a matter of law that any of plaintiff's misrepresentations rose to the level of materiality (and/or intent) that would absolve them of coverage liability under the policy. As such, defendant's motion for summary adjudication on the breach of contract claim is DENIED.

However, defendant has established as a matter of law that a genuine dispute existed as to its right to deny coverage. Defendant's motion for summary adjudication on the bad faith and punitive damages claims is therefore GRANTED.

The parties shall appear for a continued case management conference at 8:30 a.m. on June 16, 2006 to set a date for trial.

**IT IS SO ORDERED.**

Dated: April 24, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE